UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

_____

CESAR DE LA GARZA,                                    Civil No. 06-4767 (RHK/JJG)

           Petitioner,

    v.                                                       **REPORT AND RECOMMENDATION**

Commissioner JOAN FABIAN,

           Respondent.

_____

    Cesar De La Garza, P.O. Box 665, Somers, Connecticut, 06071, Petitioner, pro se.

    Kimberly Parker, Assistant Minnesota Attorney General, Suite 1800, 445 Minnesota Street, St. Paul, Minnesota, 55101, for Respondent.

_____

JEANNE J. GRAHAM, United States Magistrate Judge

    This matter is before the undersigned Magistrate Judge of the District Court on the petition of Cesar De La Garza for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent has filed a motion to dismiss the petition, with supporting documentation. (Docket Nos. 15-17.)  Petitioner has filed a response to that motion, (Docket Nos. 24-25), as well as several collateral motions, (Docket Nos. 19, 27, 30, 32 and 36).

    The matter has been referred to this Court for report and recommendation under 28 U.S.C. § 636 and Local Rule 72.1.  For the reasons discussed below, the Court concludes that Respondent's motion to dismiss should be granted in part, and denied in part, and that all of Petitioner's collateral motions should be denied.

## I. FACTUAL AND PROCEDURAL BACKGROUND[1]

During the spring of 2000, Petitioner worked at recycling facility in New London, Minnesota. A co-worker named Jesus Garcia Guajardo suspected that Petitioner had been stealing some aluminum from the facility, and he reported his suspicions to the owners. Petitioner was fired, although he apparently was not told of the reason for his termination.

On June 6, 2000, Petitioner visited Guajardo at his home. Another man named Leonardo Alonzo was also present. According to Alonzo, Petitioner was upset with Guajardo, and accused him of causing Petitioner to lose his job. Petitioner grew increasingly agitated and aggressive, and finally pulled a knife from his pants and stabbed Guajardo multiple times. Petitioner then left, and Alonzo called 911. By the time the police and paramedics arrived, Guajardo was dead.

At first, Alonzo did not tell the police that he had seen Petitioner stab Guajardo. Sometime later, however, he told the police what had happened, as summarized above. Petitioner was arrested the day after Guajardo was killed, and he was subsequently charged with first degree murder for killing Guajardo.

Petitioner disputes Alonzo's explanation of Guajardo's murder. He claims that when he arrived at Guajardo's home, Alonzo was already there. According to Petitioner, Guajardo allegedly offered Petitioner a beer, and Alonzo allegedly took offense because he had not been offered one. Guajardo and Alonzo allegedly got into a verbal argument, and Petitioner

_____

[1] The following summary of the factual background of this case is based primarily on the "Statement of Facts" section of Petitioner's application to the Minnesota Supreme Court, seeking further review of his conviction on direct appeal. That "Petition For Review Of Court Of Appeals' Decision" is included in Respondent's Appendix, (Docket No. 17).

allegedly left before Guajardo was killed.  However, the police found blood on Petitioner's pants, which matched Guajardo's DNA.

Petitioner's trial did not begin until January 2002.  The jury found Petitioner not guilty of first degree murder, but guilty of second degree murder.  He was sentenced to 326 months in prison.  Petitioner is currently serving his sentence in an out-of-state prison.

Following his conviction and sentencing, Petitioner filed a direct appeal.  His attorney filed a brief that raised a single claim – that Petitioner had been deprived of his right to a speedy trial.  Petitioner also filed a separate pro se memorandum, in which he claimed that he had been denied effective assistance of counsel.

The Minnesota Court of Appeals considered and rejected Petitioner's speedy trial claim, on the merits.  State v. De La Garza, No. C9-02-877 (Minn.App. 2003), 2003 WL 21321387 (unpublished opinion), [hereafter "De La Garza I"].  The Court of Appeals declined to rule on the ineffective assistance claim, because it was based on evidence that was "outside of the record on appeal."  The Court stated, however, that Petitioner's "right to pursue such a claim in a petition for postconviction relief is preserved."  Id. at *5.

Petitioner then filed a petition in the Minnesota Supreme Court, asking that Court to review his speedy trial claim.  The petition for review noted that Petitioner had also raised an ineffective assistance claim in the Court of Appeals; however, the ineffective assistance claim was not actually presented to the Supreme Court – presumably because it had not been addressed by the Court of Appeals, and had instead been preserved for future post-conviction

review.[2]   The Supreme Court denied Petitioner's request for further review in a single sentence order dated August 19, 2003.

Even though Petitioner's ineffective assistance claims were fully known and fully briefed when he submitted his pro se memorandum on direct appeal, and even though the Court of Appeals expressly invited Petitioner to raise those claims in a post-conviction proceeding, Petitioner did not actually file a post-conviction motion until August 19, 2004, (exactly one year after the State Supreme Court denied his request for further review). The trial court conducted an evidentiary hearing in the post-conviction proceedings on November 17, 2004.

On February 28, 2005, the trial court denied Petitioner's post-conviction motion. The Court's ruling was supported by a seventeen-page memorandum, which discussed each of Petitioner's arguments, and explained why all of those arguments were non-meritorious. (A copy of the trial court's order and memorandum is included in Respondent's Appendix.) Petitioner then filed another appeal.

In Petitioner's post-conviction appeal, he asked the Court of Appeals for permission to file an "enlarged brief," – i.e., a brief in support of his appeal that would exceed the normal restrictions on the length of such briefs. See Minn. R. App. P. 132.01, subd. 3. On June 20, 2005, the Minnesota Court of Appeals entered an order, (dated June 17, 2005), which expressly denied Petitioner's request to exceed the normal limitations on the length of briefs. That order also confirmed that Petitioner's brief in support of his appeal would be due "60

---

[2]  A copy of the petition for review is included in Respondent's Appendix, (Docket No. 17).

days after delivery of the transcript." (A copy of this order is included in Respondent's Appendix.)

Instead of preparing a brief that conformed to the applicable state appellate practice rules, (as ordered by the Court of Appeals), Petitioner pursued a series of futile efforts to avoid those rules, which were explained in a later order by the Minnesota Court of Appeals, dated October 20, 2005. (A copy of this order is included in Respondent's Appendix.) That order shows that Petitioner first asked the Minnesota Supreme Court to reverse the Court of Appeals' ruling on his request to exceed the brief length restrictions. That request was denied. Petitioner also made a second request to the Court of Appeals for permission to file an enlarged brief. That request also was denied.

On September 2, 2005, Petitioner filed a 56-page brief in support of his appeal, which was rejected by the Court of Appeals, because it was found to exceed the Court's brief length limitations. On September 15, 2005, the Court of Appeals ordered Petitioner to file a conforming brief. Petitioner filed a flurry of motions in response to that order, which led to the Court of Appeals' critical order of October 20, 2005. The material parts of that order read as follows:

> "6. Appellant has filed four motions pertaining to this court's September 15 order. On September 15, appellant filed a motion to accept his nonconforming brief. On September 19, appellant filed a motion for extension of time to correct deficiencies. On September 29, appellant filed a motion for relief from governmental interference with appellant's access to the courts.[3] Finally, on September 30, appellant filed a motion to withdraw portions of the brief.

---

[3] In light of the fact that Petitioner had just filed a 56-page brief in support of his appeal, which the Court of Appeals found to be too long, it is difficult to understand how Petitioner could claim, at that stage of the proceedings, that he had been denied access to the courts.

7.   Appellant's brief raises four issues.  In the September 30 motion, appellant seeks leave to withdraw the first three issues, which would leave only issue IV for this court's review.

8.   Appellant's first three issues comprise 13 pages of briefing.  If these issues are withdrawn, then appellant's brief is within the 45-page limit for a principal brief.  <u>See</u> Minn. R. Civ. App. P. 132.01, subd. 3.

The Court of Appeals then ordered that: "Appellant's motion to withdraw issues I through III from appellant's brief is granted.  <u>The appeal is limited to issue IV in appellant's brief.</u>"  (Emphasis added.)

Thus, the only ground for relief that actually was presented to the Minnesota Court of Appeals was a claim identified as "issue IV."  In that "issue IV," Petitioner claimed that he had been deprived of his constitutional rights to due process and assistance of counsel, because his pre-trial custodians at the local county jail allegedly refused to let him communicate with his attorney on one evening during his trial.  The Minnesota Court of Appeals considered and rejected that claim on the merits, and thus upheld Petitioner's conviction for a second time.  <u>De La Garza v. State</u>, No. A05-845 (Minn.App. 2006), 2006 WL 1984604 (unpublished opinion), [hereafter "<u>De La Garza II</u>"].  Petitioner raised the same claim, (i.e., the "issue IV" claim), in a subsequent petition for further review in the Minnesota Supreme Court, but that petition was denied on September 27, 2006.

On December 5, 2006, Petitioner filed his current application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The petition is a 221-page handwritten document, which lists eleven grounds for relief, identified by Petitioner as follows:

(1) "Denial of the right to consult with counsel during over-night recess of jury trial in violation of Sixth Amend. to U.S. Const. Right to Counsel."  (Petition, [Docket No. 1], p. 5.)

(2) "Denial of the right to effective assistance of counsel, failure to challenge unconstitutional search warrant, in violation of the Sixth Amend. U.S. Const. Denial of right to appeal." (Id., p. 35.)

(3) "Denial of the right to counsel when trial counsel abdicated his duty of loyalty by adverse action in violation of Six Amend. U.S. Const. and Due Process under the 14th Amend. U.S. Const. U.S. Denial of the right to appeal."  (Id., p. 56.)

(4) "Denial of the right to counsel at critical stages of trial in violation of Sixth Amend. U.S. Const. And denial of the right to appeal.  And denial of the right to self-representation." (Id., p. 70.)

(5) "Ineffective assistance of trial counsel failure to confront state evidence in violation of Sixth Amend. U.S. Const.  Denial of right to appeal." (Id., p. 81.)

(6) "Denial of the right to a fair trial in violation of Sixth Amend. U.S. Const.  Denial of the right to appeal." (Id., p. 106.)

(7) "Ineffective assistance of trial counsel admitting guilt of crime essential for conviction in violation of Six Amend. U.S. Const. and failure to confront in violation of Six Amend. U.S. Const. Denial of the right to appeal." (Id., p. 139.)

(8) "Denial of right to appeal; denial of a fair trial; denial of a speedy tril [sic]; denial of right to counsel on appeal and at trial; denial of Fourteenth Amendment U.S. Const. Due Process, Equal Protection inter alia." (Id, p. 152.)[4]

---

[4] Although Petitioner's eighth ground for relief includes a reference to speedy trial, this claim does not advance the same speedy trial claim that was raised in his direct appeal; but rather, Petitioner is challenging the manner in which his attorneys, (at both the trial and appellate court levels), preserved and presented his speedy trial rights.  In other words, Ground Eight is really another ineffective assistance of counsel claim, not a speedy trial claim

(9) "Ineffective assistance of counsel Failure to protect from self-incrimination in violation of Sixth Amend. U.S. Const. and Denial of right to appeal." (Id., p. 209.)

(10) "Ineffective assistance of trial counsel Assisting prosecution to convict Petitioner in violation of Six Amed. U.S. Const.  Denial of right to appeal." (Id., p. 212.)

(11) "Denial of a fair trial when the state vouched for the States [sic] star witness in violation of Six Amend. U.S. Const." (Id., p. 215.)

Respondent contends that ten of Petitioner's eleven habeas corpus claims – Grounds Two through Eleven – have not been properly presented to the Minnesota state appellate courts.  According to Respondent, only Ground One of the current petition has been fairly presented to, and decided on the merits by, the Minnesota Supreme Court.  This much of Respondent's argument is accepted.

However, the Court disagrees with Respondent's further contention that the instant petition must be summarily dismissed in its entirety, and presumably without prejudice, because of the inclusion of the ten claims that have not been fairly presented and decided in the state courts.  Respondent suggests that those ten claims cause the current petition to be a "mixed petition" – i.e., a petition that includes claims for which Petitioner has exhausted his state court remedies, together with claims for which he has not yet exhausted his available state court remedies.  The Court rejects that suggestion, and finds instead that the ten claims that have not been fairly presented and decided in the state courts are not merely "unexhausted," but rather, they are procedurally defaulted.   The Court will therefore

---

per se.  In Petitioner's 57-page explication of Ground Eight, he has never attempted to show that the Minnesota Court of Appeals misapplied any United States Supreme Court precedent governing the federal constitutional right to a speedy trial.

8

recommend that those ten claims, (i.e., Grounds Two through Eleven), be summarily dismissed, with prejudice, pursuant to the doctrine of procedural default. However, the Court will further recommend that Respondent's motion to dismiss be denied with respect to Petitioner's one properly-exhausted claim, (Ground One), and that Respondent be directed to file an answer addressing that claim on the merits.

## II. DISCUSSION

### A. Applicable Legal Rules

It is well established that a federal court may not entertain a petition for a writ of habeas corpus on behalf of a state prisoner unless the prisoner has first exhausted all available state court remedies for all of his claims.  28 U.S.C. § 2254(b); O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); Rose v. Lundy, 455 U.S. 509 (1982).  This exhaustion of state remedies requirement is based on the principles of comity and federalism; its purpose is to ensure that state courts are given the first opportunity to correct alleged federal constitutional errors raised by state prisoners.  O'Sullivan, 526 U.S. at 842; Duncan v. Henry, 513 U.S. 364, 365-66 (1995) (per curiam); Rose, 455 U.S. at 518-19; Smittie v. Lockhart, 843 F.2d 295, 298 (8th Cir. 1988).

"Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts,... state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan, 526 U.S. at 845 (emphasis added).  In other words, a prisoner must fairly present all of his constitutional claims to the highest available state court before

seeking relief in federal court. Id. at 847. See also Baldwin v. Reese, 541 U.S. 27, 29 (2004) ("the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review)"). Thus, in Minnesota, a claim must be fairly presented to the Minnesota Supreme Court before it can be raised and decided in a federal habeas corpus proceeding.

"When a state court remedy is available for a state prisoner's unexhausted claim, the federal habeas court must defer action until the claim is exhausted, either by dismissing the federal petition without prejudice or by using the 'stay and abeyance' procedure described in Rhines v. Weber, [544 U.S. 269]... (2005)." Armstrong v. Iowa, 418 F.3d 924, 926 (8th Cir. 2005), cert. denied, 126 S.Ct. 1351 (2006). However, when a prisoner has not exhausted his state court remedies for some particular claim, and state procedural rules preclude any further attempts to satisfy the exhaustion requirement as to that claim, then the claim technically is not "unexhausted," but rather, it has been "procedurally defaulted." Coleman v. Thompson, 501 U.S. 722, 750 (1991); McCall v. Benson, 114 F.3d 754, 757 (8th Cir. 1997). See also Middleton v. Roper, 455 F.3d 838, 855 (8th Cir. 2006) ("'If a prisoner has not presented his habeas claims to the state court, the claims are defaulted if a state procedural rule precludes him from raising the issues now.'"), cert. denied, 127 S.Ct. 980 (2007), quoting Abdullah v. Groose, 75 F.3d 408, 411 (8th Cir.1996) (en banc), 517 U.S. 1215 (1996).

In effect, "if a petitioner's unexhausted claims are procedurally barred under state law, the exhaustion requirement is satisfied because 'this requirement... refers only to remedies

still available at the time of the federal petition.'" <u>Copeland v. State of Minnesota</u>, Civil No. 03-3631 (ADM/JSM) (D. Minn. 2004) (Montgomery, J.), 2004 WL 1701034 at *2, quoting <u>Gray v. Netherland</u>, 518 U.S. 152, 161-62 (1996).  <u>See also</u> <u>Crum v. Minnesota</u>, Civil No. 05-2363 (DSD/AJB) (D. Minn. 2006) (Doty, J.), 2006 WL 47338, *1 ("[i]f a state court remedy is not available for an unexhausted claim and resort to state court would prove futile, the claim is considered procedurally defaulted"), quoting <u>Armstrong</u>, 418 F.3d at 926 (quoting <u>Gray</u>, 518 U.S. at 162).   In other words, if there is still a state court remedy available, a previously unraised habeas claim is "unexhausted," but if there is no state court remedy still available, then the claim is "procedurally defaulted."  <u>See</u> <u>Armstrong</u>, 418 F.3d at 926 ("if no state court remedy is available for the unexhausted claim – that is, if resort to the state courts would be futile – then the exhaustion requirement in § 2254(b) is satisfied, but the failure to exhaust "provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim...") (quoting <u>Gray</u>, 518 U.S. at 162).

A claim that has been procedurally defaulted will not be entertained in a federal habeas corpus proceeding, unless the petitioner has shown "cause and prejudice" to excuse his procedural default, or, in the alternative, that there would be a "fundamental miscarriage of justice" if the federal court declined to consider the claim.  <u>Coleman</u>, 501 U.S. at 750.

The rules governing procedural default have been summarized by the Supreme Court as follows:

> "In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate

cause for the default and actual prejudice as a result of the alleged violations of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice".

Id.

The "fundamental miscarriage of justice" exception (to overcome a procedural default) is available only upon a "showing, based on new evidence, that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" Brownlow v. Groose, 66 F.3d 997, 999 (8th Cir. 1995), cert. denied, 516 U.S. 1161 (1996) (emphasis added), quoting Schlup v. Delo, 513 U.S. 298, 327 (1995). In other words, a petitioner cannot simply point to errors that allegedly occurred during the course of his criminal prosecution; he must instead offer some new evidence which affirmatively demonstrates that he is, in fact, innocent of the crime for which he was convicted.[5]

---

[5]    "The actual innocence exception is concerned with claims of actual, not legal innocence. Anderson v. United States, 25 F.3d 704, 707 (8th Cir. 1994). It is evidence of factual innocence coupled with a constitutional violation which triggers the actual innocence exception. Indeed, a credible claim of actual innocence 'requires [a] petitioner to support his allegation of constitutional error with new reliable evidence....' [Schlup, 513 U.S. at 324.] Examples of evidence which may establish factual innocence include credible declarations of guilt by another, see Sawyer v. Whitley, 505 U.S. 333, 340... (1992), trustworthy eyewitness accounts, see Schlup, 513 U.S. [at 324]... and exculpatory scientific evidence."

Pitts v. Norris, 85 F.3d 348, 350-51 (8th Cir.), cert. denied, 519 U.S. 972 (1996). For purposes of showing actual innocence, "'evidence is new only if it was not available at trial and could not have been discovered earlier through the exercise of due diligence.'" Johnson v. Norris, 170 F.3d 816, 817 (8th Cir. 1999), quoting Armine v. Bowersox, 128 F.3d 1222, 1230 (8th Cir. 1997) (en banc), cert. denied, 523 U.S. 1123 (1998).

B. Petitioner's Procedural Default

In this case, the only claim that was adjudicated on Petitioner's direct appeal was a speedy trial claim, which is not presented here.  Although Petitioner attempted to raise an ineffective assistance of counsel claim on direct appeal, the Minnesota Court of Appeals declined to address that claim, and instead ruled that Petitioner's "right to pursue such a claim in a petition for post-conviction relief is preserved."  De La Garza I, 2003 WL 21321387 at *5. Because of that ruling by the Court of Appeals, Petitioner asked the Minnesota Supreme Court, (in his direct appeal), to review only the speedy trial claim.[6]  Thus, the only claim that was "exhausted" by Petitioner's direct appeal was a speedy trial claim, which is not presented here.

Petitioner did, of course, raise a number of ineffective assistance of counsel claims in his post-conviction motion, and the trial court considered and rejected all of those claims. Thereafter, Petitioner attempted to raise four ineffective assistance of counsel claims in his post-conviction appeal.  However, the Minnesota Court of Appeals required Petitioner to reduce the length of his brief in support of his post-conviction appeal, and Petitioner elected to comply with that requirement by voluntarily dismissing three of his four claims.  Thus, only one claim for relief was properly before the Minnesota Court of Appeals on Petitioner's post-conviction appeal, and only that one claim was actually adjudicated in that appeal.  The one

---

[6]   Petitioner's request for further review noted that (a) he had raised the issue of ineffective assistance of counsel in a pro se brief to the Court of Appeals, and (b) the Court of Appeals had not considered the issue.  However, Petitioner did not actually request the Minnesota Supreme Court to review his ineffective assistance of counsel claim in his direct appeal; and, in any event, that claim would not have been properly reviewable in the Supreme Court, because it had not been addressed by the Court of Appeals.

claim that was actually raised, and decided on the merits, in Petitioner's post-conviction appeal is the claim that is now presented as Ground One in Petitioner's current habeas corpus petition.

Thus, the Court concludes that only Ground One of the current petition has been fairly presented to, and decided on the merits by, the Minnesota appellate courts.[7] Petitioner's remaining claims, Grounds Two through Eleven, have never been properly before the Minnesota appellate courts, and the merits of those claims have never been considered or adjudicated by the Minnesota appellate courts.

Furthermore, it is now too late for Petitioner to attempt to present Grounds Two through Eleven to the Minnesota appellate courts. Under Minnesota law, Petitioner was required to raise all of his known (or knowable) post-conviction claims in one post-conviction proceeding. Powers v. State, 731 N.W.2d 499, 501 (Minn. 2007) ("matters raised or known but not raised in an earlier petition for postconviction relief will generally not be considered in subsequent petitions for postconviction relief"), citing Spears v. State, 725 N.W.2d 696, 700 (Minn. 2006), cert. denied, __ S.Ct. __ (June 18, 2007), 2007 WL 1406882. Because Petitioner's state post-conviction proceedings are completed, he is now foreclosed from seeking any further relief in the state courts on the claims listed as Grounds Two through Eleven of his current petition. This means that Grounds Two through Eleven are not truly "unexhausted" claims, but rather, they are procedurally defaulted claims, because Petitioner is now procedurally barred from raising those claims in the state courts. Interiano v. Dormire, 471 F.3d 854, 856 (8th Cir.

---

[7] Respondent correctly acknowledges that Ground One of the petition is a properly exhausted claim. (Respondent's Memorandum, [Docket No. 16], p. 16.)

2006) ("Claims in a federal habeas petition not presented in the state court proceedings and for which there is no remaining state court remedy are defaulted.").

Thus, the Court rejects Respondent's contention that Petitioner has filed a "mixed petition" – i.e., one that includes both exhausted claims, and unexhausted claims for which there is still an available state court remedy.  In this case, there are no longer any viable state court remedies still available to Petitioner for Grounds Two through Eleven of his current petition.  As a result, those claims are not "unexhausted," (i.e., still reviewable in state court); they are, in fact, procedurally defaulted.

   C. <u>Cause and Prejudice/Actual Innocence</u>

The only remaining issue to consider is whether Petitioner has shown cause and prejudice, or actual innocence, to excuse his procedural default.  It appears that Petitioner already knew, before he even filed his current petition, that most of his claims had been procedurally defaulted.  Anticipating Respondent's motion to dismiss, Petitioner filed two affidavits with his petition, in which he has attempted to show cause to excuse his procedural default.  (Docket Nos. 2 and 3.)  In those affidavits, (which are 130 pages long altogether), Petitioner contends that the State of Minnesota prevented him from raising all of his current claims in his state post-conviction proceedings.  He cites various prison regulations that allegedly restricted his access to his "legal papers," as well as various prison conditions that allegedly made it difficult for him to prosecute his claims in the state courts.

It is apparent to the Court, however, that Petitioner has had ample access to the courts.  His various submissions to the state courts, like his submissions here, are best-described as "voluminous."  It is clear from those submissions that Petitioner was not prevented from

15

developing his post-conviction claims.  To the contrary, it appears that he <u>over</u>developed his post-conviction claims, by filing an appellate court brief that was found to be too long.  When Petitioner was forced to winnow down the presentation of his claims, <u>as litigants commonly must do</u>, he elected to focus all of his attention on just one claim – namely the claim that appears as Ground One in the current petition.

Petitioner was not directly or indirectly compelled to exclude any claim from his post-conviction proceedings; he was merely required to submit a somewhat shorter brief in his post-conviction appeal.  Petitioner alone elected to shorten his brief by asking for leave to voluntarily withdraw several of his claims.  The Minnesota Court of Appeals cannot be faulted for granting that request, (by that Court's order of October 19, 2005).[8]

In short, Petitioner has only himself to blame for not raising all of his current claims for relief in his state post-conviction appeal.  Thus, the Court finds that Petitioner is unable to show sufficient "cause" to excuse his procedural default.  <u>See</u> <u>Bell v. Attorney General of State of Iowa</u>, 474 F.3d 558, 561 (8th Cir. 2007) ("[a] cause is sufficient to excuse procedural default when it is external to the petitioner, and not attributable to the petitioner").

Because Petitioner has failed to satisfy the cause component of the cause and prejudice requirement, it is unnecessary to discuss the prejudice component.  <u>Ashker v. Class</u>, 152 F.3d 863, 871 (8th Cir. 1998) (when petitioner "has not shown adequate cause to

---

[8]  Petitioner apparently believes that the Minnesota Court of Appeals misapplied the State's procedural rules regarding the permissible length of briefs submitted to that Court, but that is a matter that cannot properly be considered here, because "[a] federal court may not re-examine a state court's interpretation and application of state law."  <u>Schleeper v. Groose</u>, 36 F.3d 735, 737 (8th Cir. 1994).  More importantly, it was not the State's rules that actually caused Petitioner's procedural default; it was his own decision to shorten his brief by excluding some of his claims, instead of condensing his arguments.

overcome the procedural bar... we need not consider the issue of actual prejudice"); <u>Sweet v. Delo</u>, 125 F.3d 1144, 1151 (8th Cir. 1997), <u>cert</u>. <u>denied</u>, 523 U.S. 1010 (1998) (same).

Petitioner also does not qualify for the "actual innocence" exception, because he has offered no new evidence to affirmatively demonstrate that he did not commit the crime for which he was convicted.  Petitioner has not presented any clear and convincing proof that he did not commit the crime found by the jury at his trial.  He has not even attempted to prove, by compelling new evidence (or otherwise), that he is truly innocent of the crime for which he was convicted.  Therefore, Petitioner's procedurally defaulted claims cannot be entertained under the actual innocence exception.  <u>See</u> <u>Cox v. Burger</u>, 398 F.3d 1025, 1031 (8th Cir.) (successful demonstrations of actual innocence are "rare and limited," because the actual innocence exception is "permitted only for 'truly persuasive demonstrations of actual innocence,' based on reliable new evidence which shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner] in light of the new evidence'"), <u>cert</u>. <u>denied</u>, 126 S.Ct. 93 (2005) (citations omitted).

D.  <u>Disposition of Respondent's Motion to Dismiss</u>

For the reasons discussed above, the Court finds that Grounds Two through Eleven of the current petition are not merely "unexhausted," (as suggested by Respondent), but rather, all of those claims are procedurally defaulted, because there is no longer any viable state court remedy available to Petitioner for any of those ten claims for relief.  Thus, the Court concludes that the instant petition is <u>not</u> a "mixed petition" that must be dismissed in its entirety.  At the same time, however, the Court concludes that Petitioner's procedurally defaulted claims, (Grounds Two through Eleven), must be summarily dismissed with prejudice.  The Court will

therefore recommend that Respondent's pending motion to dismiss be denied in part, because the petition should <u>not</u> be dismissed in its entirety due to non-exhaustion, and granted in part, because Petitioner's procedurally defaulted claims should indeed be dismissed – with prejudice.

Respondent has not yet addressed the merits of Petitioner's one claim for relief that can properly be entertained here – namely Ground One of the petition.  Therefore, the Court will further recommend that Respondent be ordered to file an answer showing cause why Petitioner should not be granted a writ of habeas corpus on Ground One of his petition. Respondent should carefully explain why the Minnesota Court of Appeals decision in <u>De La Garza II</u> is not contrary to, or an unreasonable application of, relevant federal case law – including <u>Geders v. United States</u>, 425 U.S. 80 (1976); <u>Perry v. Leeke</u>, 488 U.S. 272 (1989); and <u>Moore v. Purkett</u>, 275 F.3d 685 (8th Cir. 2001).  Respondent should also explain how the factual determinations set forth in the State Court of Appeals' decision are fairly supported by the record.

## III.  PETITIONER'S COLLATERAL MOTIONS

### A.  <u>Motion for Appointment of Counsel</u>

Petitioner has filed a motion asking that counsel be appointed to represent him in this matter.  (Docket No. 27.)  Indigent persons do not have a constitutional or statutory right to counsel in civil cases, including habeas corpus proceedings.  <u>Pennsylvania v. Finley</u>, 481 U.S. 551, 556 (1987).  Rather, the appointment of counsel in cases such as this one is a matter committed to the discretion of the trial court.  <u>McCall v. Benson</u>, 114 F.3d 754, 756 (8th Cir. 1997); <u>Mosby v. Mabry</u>, 697 F.2d 213, 214 (8th Cir. 1982).  Among the factors a court should

consider in determining whether to appoint counsel are the factual complexity of the case, the ability of the petitioner to present his claims, the complexity of the legal issues, and whether both the petitioner and the court would benefit from representation by counsel for both parties. McCall, 114 F.3d at 756; Johnson v. Williams, 788 F.2d 1319, 1322-23 (8th Cir. 1986).

In this case, the Court finds that neither the facts nor the legal issues raised in the petition are so complex as to warrant appointment of counsel.  It appears to the Court that Petitioner has the threshold ability to articulate his claims, to argue his positions, and to communicate effectively with the Court.  The Court does not believe that appointment of counsel would substantially benefit the Court or Petitioner.  The Court will therefore recommend that Petitioner's motion for appointment of counsel be denied.

B.  Motions for Discovery and Evidentiary Hearing

Also before the Court at this time are Petitioner's pending motions for discovery and an evidentiary hearing.  (Docket Nos. 30 and 32.)  Petitioner contends that he needs to conduct discovery, and that an evidentiary hearing should be held, so that he can produce certain state court records that purportedly will support his application for habeas corpus relief. However, Respondent has already filed the briefs and appendices from Petitioner's state court appeals, and those materials, (particularly the appendices), appear to contain the relevant records from the extensive state court proceedings in this case.

Petitioner contends that the documents filed by Respondent are not complete, but he has not adequately identified any specific documents that have been omitted.  He also has not adequately explained why any documents that may have been omitted are relevant to the issues to be decided in the present habeas corpus proceeding.

Petitioner also broadly contends that Respondent has deprived him (and the Court) of the documents that he needs to show cause for his procedural default. However, Petitioner has filed 130 pages of affidavits, (Docket Nos. 2 and 3), in support of his petition, much of which addresses Respondent's anticipated arguments regarding non-exhaustion and procedural default. The length and breadth of those affidavits, (as well as Petitioner's other voluminous submissions in this case), effectively negates Petitioner's contention that he cannot adequately present his positions without further discovery and an evidentiary hearing. Therefore, the Court will recommend that Petitioner's motions for discovery and an evidentiary hearing be denied.[9]

C. Motion to Stay

Finally, Petitioner has filed a motion seeking to stay any further proceedings in this action until after he has been granted greater access to his "legal papers." (Docket Nos. 19 and 36.[10]) Petitioner contends that this case should be "held in abeyance," because prison officials are interfering with his access to the courts. Once again, however, Petitioner's argument is belied by the massive volume of his submissions of record in this case. The Court finds that Petitioner has had sufficient access to the courts, and he has had ample opportunity to present his arguments in this case. He has already submitted hundreds of

---

[9] The Court notes, however, that Respondent presumably will have to furnish copies of the records and transcripts from the state court post-conviction proceedings, in order to fully address the merits of Ground One of the current petition.

[10] For reasons that are not readily apparent, the motion for stay has been filed in two places in the current record, i.e., as Docket No. 19, and again as Docket No. 36.

pages of materials in support of his claims and contentions in this case.  The Court sees no

need to stay this action in order to give Petitioner more time to submit more papers.

## IV.  RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1.  Respondent's Motion to Dismiss, (Docket No. 15), be granted in part, and denied

in part;

2.  Grounds Two through Eleven of Petitioner's habeas corpus petition be denied, and

dismissed, with prejudice;

3.  Respondent be ordered to file a comprehensive answer to Ground One of

Petitioner's habeas corpus petition, showing cause why Petitioner should not be granted a

writ of habeas corpus on that claim; and

4.  Petitioner's motion for appointment of counsel, (Docket No. 27), motion for

discovery, (Docket No. 30), motion for an evidentiary hearing, (Docket No. 32), and motion

for stay, (Docket Nos. 19 and 36), be denied.


Dated:  July 17, 2007                         s/Jeanne J. Graham

                                        _____
                                         JEANNE J. GRAHAM
                                         United States Magistrate Judge

Pursuant to D. Minn. LR 72.2(b), any party may object to this Report and Recommendation
by filing and serving specific, written objections by August 3, 2007.  A party may respond to
the objections within ten days after service thereof.  Any objections or responses filed under
this rule shall not exceed 3,500 words.  A District Judge shall make a de novo determination
of those portions to which objection is made.  Failure to comply with this procedure shall
operate as a forfeiture of the objecting party's right to seek review in the United States Court
of Appeals for the Eighth Circuit.