**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| **Cesar de la Garza,** | **Civil No. 06-4767 (RHK/JJG)** |
| Petitioner, | |
| v. | **REPORT AND RECOMMENDATION** |
| **Joan Fabian,** | |
| Respondent. | |

JEANNE J. GRAHAM, United States Magistrate Judge

This matter returns to the undersigned on petitioner Cesar de la Garza's petition for a writ of habeas corpus under 28 U.S.C. § 2254 (Doc. No. 1). Respondent Joan Fabian is a party in her capacity as Commissioner of the Minnesota Department of Corrections (the Commissioner). De la Garza is proceeding on his own behalf. Kimberly R. Parker, Assistant Minnesota Attorney General, is representing the Commissioner.

In addition to the relief he seeks in his petition, Mr. de la Garza (de la Garza) moves for summary judgment (Doc. No. 40) and other relief (Doc. No. 52). These matters are duly referred to this Court for a report and recommendation in accordance with 28 U.S.C. § 636 and Local Rule 72.1(a).

**I.  BACKGROUND**

To briefly review, de la Garza was convicted for second-degree murder following a jury trial in early 2002. He was sentenced to 326 months' imprisonment and is currently housed at a state prison in Connecticut. Through his current petition, de la Garza challenged nearly every aspect of this conviction. By an order on August 31, 2007, the district court adopted this Court's

report and recommendation of July 17, 2007. That order dismissed all the claims in the petition except one, and it directed the Commissioner to file further briefing on that issue. Being advised of this briefing, this Court now considers the surviving claim on its merits.

De la Garza claims that he was denied his Sixth Amendment right to counsel because jail officials did not allow him to communicate with his counsel. He initially litigated this claim in a post-conviction proceeding before a Minnesota district court. Focusing on this claim, the court conducted an evidentiary hearing on November 17, 2004. By an order on February 28, 2005, the court ruled that de la Garza was not entitled to any post-conviction relief. De la Garza appealed, and the Minnesota Court of Appeals affirmed by an unpublished decision on July 18, 2006. *See De la Garza v. State*, No. A05-845, 2006 WL 1984604 (July 18, 2006), *rev. denied* (Minn. Sept. 27, 2006).

In the post-conviction proceedings, the state courts made the following findings. While awaiting trial, de la Garza was detained at the Kandiyohi County Law Enforcement Center. As a sanction following a violent incident in early January 2002, jail staff placed de la Garza in administrative segregation, allowing him out of his cell for only brief periods.

Ron Wilson, the chief administrator at the jail, described some of the policies controlling those in administrative segregation. When such persons were released from their cells, they were allowed to shower, read mail, and make telephone calls.

Jury selection began in the trial of de la Garza on January 28, 2002. At that time, de la Garza was permitted outside his cell for ninety minutes a day. According to de la Garza, at the end of proceedings that day, his counsel gave him newspaper articles to review, which allegedly contained some adverse pretrial publicity. His counsel then instructed that, if he was sufficiently concerned, de la Garza should call and ask him to prepare a motion to transfer venue.

2

De la Garza alleges that, when he asked jail staff for permission to call his counsel that night, they refused. When he asked his counsel about the motion the next day, his counsel said that he no longer had time to prepare a memorandum and so he could not move to transfer venue.

The state courts, however, expressly discredited this account. As the Minnesota Court of Appeals explained, "[T]he record does not reflect that de la Garza actually made such a request, that his attorney was even available, or that he could have prepared the necessary memorandum." *See De la Garza*, 2006 WL 1984604 at *3. It then reasoned that, even if de la Garza made this showing, there was no indication that the jury was biased or that a change of venue would have aided de la Garza's case. *Id.*

Aside from the purported incident on January 28, there were no other findings on whether de la Garza was restricted in his access to counsel. The jury returned its verdict on February 1, 2002, finding de la Garza guilty of second-degree murder and not guilty of first-degree murder.

## II.   DISCUSSION

### A.   Introduction

When deciding whether a petitioner is entitled to a writ of habeas corpus under § 2254, a court looks to § 2254(d), which provides,

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in a State court proceedings unless the adjudication of the claim—
>
> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

3

This portion of the statute provides two methods for review. One is a legal standard of review, which examines whether the state court decision comports with clearly established federal law. The other is a factual standard of review, which examines whether the findings in the state court decision are reasonable, based on the evidence in the record.

Both standards require separate discussion. As noted at the outset, the underlying issue is whether jail staff denied de la Garza access to counsel, in violation of the Sixth Amendment.

Under the legal standard, the question is whether de la Garza is required to show that jail staff caused him prejudice. As the following analysis illustrates, clearly established federal law does not answer this question, particularly in a scenario involving jail staff rather than a court order. Under the factual standard, the question is whether the state court properly found that jail staff did not deny de la Garza access to counsel. Consistent with the principles of habeas review, this question is informed by the high level of deference given to factual findings of state courts.

Having outlined this framework, this Court now turns to the substantive analysis.

### B.  Legal Review

#### 1.  Clearly Established Federal Law

Under the first clause of § 2254(d), a state court decision is contrary to clearly established federal law where the state court reaches a conclusion opposite that of the U.S. Supreme Court on a question of law, or reaches an opposite result on facts that are materially indistinguishable from U.S. Supreme Court precedent. A state court decision involves unreasonable application of clearly established federal law where the state court correctly identifies the controlling law but does not reasonably apply it. *Linehan v. Milczark*, 315 F.3d 920, 924 (8th Cir. 2003).

When reviewing under this standard, the state court decision does not necessarily need to be free of error. If the rationale of the decision is mistaken, but the outcome can be reconciled

4

with clearly established federal law, the decision of the state court is properly upheld. *Kinder v. Bowersox*, 272 F.3d 532, 538 (8th Cir. 2001).

This standard of review also requires a federal court to decide what is "clearly established federal law." As the ensuing analysis will show, the question is important to this case. Clearly established federal law is sometimes described as the governing legal principles, as set out by the U.S. Supreme Court, at the time the state court made its decision. *See Guinn v. Kenma*, 489 F.3d 351, 353 (8th Cir. 2007).

In *Williams v. Taylor*, the U.S. Supreme Court attempted to clarify the standard. Writing for a plurality, Justice Sandra Day O'Connor stated that clearly established federal law refers to "the holdings, as opposed to the dicta, of this Court's decisions." 529 U.S. 362, 412 (2000). The Eighth Circuit, in ensuing decisions, often recited this language. *See, e.g., Poole v. Goodno*, 335 F.3d 705, 707 (8th Cir. 2003).

The precise meaning of this language, however, was a serious point of contention when the U.S. Supreme Court revisited it in *Carey v. Musladin*. 127 S.Ct. 649 (2006). The majority opinion took a relatively narrow view of clearly established federal law, holding that if the Court had no prior holdings on point, there is no standard and thus no clearly established federal law. *Id.* at 654.

But two Justices, who only concurred in the judgment, criticized the result. Justice Souter proposed that, if a general underlying principle is clear, it is possible to determine whether a state court decision is contrary or unreasonable. *Id.* at 657-58. Justice Stevens suggested that even though a particular holding is unclear, the underlying standard may not be, and so the standard still provides clearly established federal law. *Id.* at 655.

5

As a practical matter, the approaches suggested by these concurrences affects the analysis here. Although the majority opinion in *Carey* sets out a more stringent standard, there is no easy way to distinguish between an "on-point" holding and a more general principle. In the interests of complete analysis, this Court will consider the case law it deems most likely to be controlling. But as the following analysis indicates, there are circumstances where Supreme Court precedent may be too indefinite to be deemed "clearly established federal law" under the majority opinion in *Carey*.

### 2. Interference with Access to Counsel

Being mindful of this standard, the analysis turns to the merits. De la Garza argues that, when jail officials allegedly interfered with his communications with counsel, they violated his Sixth Amendment right to counsel. As noted earlier, the state courts initially found there was no proof of such interference. But the state courts also concluded, even if there was no such proof, de la Garza also did not show that the alleged interference unfairly affected his trial.

In this context, the legal question is whether interference with the Sixth Amendment right to counsel, without some showing of prejudice, calls the underlying conviction into doubt. Two decisions of the U.S. Supreme Court are particularly important here.

One is the Court's decision in *United States v. Geders*. 425 U.S. 80 (1976). In this case, the accused testified in his defense, and the close of his direct testimony coincided with the close of court proceedings that day. Because of concern about coaching against cross-examination, the presiding judge instructed the accused that he could not consult his attorney during the overnight recess. *Id.* at 81-83. When the Fifth Circuit upheld the ensuing conviction, it reasoned that the accused did not show any prejudice from denial of counsel during that time. *Id.* at 86.

6

The *Geders* Court reversed. Although it recognized the concern about coaching against cross-examination, it found this issue was outweighed by the necessity for the accused to consult with counsel and discuss trial strategy. *Id.* at 90-91. The Court did not specifically address the issue of prejudice, but by overturning the appeals court, it implicitly ruled that the accused did not have to make a showing of prejudice. The Court also carefully signaled that its decision was limited to the specific circumstances of the case:

> We need not reach, and we do not deal with limitations imposed in other circumstances. We hold that an order preventing petitioner from consulting with his counsel "about anything" during a 17-hour overnight recess between his direct- and cross-examination impinged upon his right to the assistance of counsel guaranteed by the Sixth Amendment.

The Court revisited this question in *Perry v. Leeke.* 488 U.S. 272 (1989). As in *Geders*, the issue involved testimony by the accused at trial. In a fifteen-minute recess between direct and cross examination, the presiding judge prevented the accused from consulting with counsel, again because of concerns about improper coaching. Here, the Court concluded, there was no improper interference with the right to counsel. Distinguishing *Geders*, it ruled that due to the brevity of the recess, the court's concern about improper coaching now outweighed the accused's need to consult about trial tactics. *Id.* at 282-84.

While the *Geders* decision was silent regarding about a showing of prejudice, the *Perry* decision is more circumspect. It noted that in *Geders*,

> [W]e simply reversed the defendant's conviction without pausing to consider the extent of actual prejudice, if any, that resulted from the defendant's denial of access to his lawyer during the overnight recess.

*Id.* at 278-79. The Court further indicated that prejudice analysis, in cases involving interference with counsel, was different from that for other Sixth Amendment right-to-counsel cases:

7

> [Under the different standard for] "actual ineffectiveness," the "benchmark . . . must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." . . . Prior to our consideration of the standard for measuring the quality of the lawyer's work, however, we had expressly noted that direct governmental interference with the right to counsel is a different matter. . . .
>
> * * *
>
> Our citation of *Geders* [in another case] was intended to make clear that "[a]ctual or constructive denial of counsel altogether" is not subject to the kind of prejudice analysis that is appropriate in determining whether the quality of a lawyer's performance itself has been constitutionally ineffective.

*Id.* at 279-80 (quoting *Strickland v. Washington*, 466 U.S. 668, 692 (1984)) (citations omitted).

The *Perry* decision explains what is *not* expected of a prejudice analysis where a Sixth Amendment violation is based on government interference with counsel. It indicates that, unlike ineffective assistance of counsel, the accused is not necessarily required to show such prejudice that the outcome at trial would be different.

What is problematic is that the *Perry* decision does not directly explain what *is* expected of this prejudice analysis. In some circumstances, prejudice must be presumed, like in *Geders*. In other circumstances, the potential for prejudice must be weighed against other considerations, like in *Perry*. But the *Perry* decision does not explain when prejudice should be presumed and when it should not be. Nor does it supply any factors for evaluating prejudice, though the *Perry* decision suggests that a key issue is whether the accused has an adequate opportunity to consult with counsel about trial tactics.

Subsequent decisions from the Court offer little additional guidance. In *Smith v. Robbins*, for instance, the Court observed that prejudice is presumed for "various kinds" of interference with counsel. 528 U.S. 259, 287 (2000).

8

And though *Perry* took care to distinguish between ineffective counsel and interference with counsel, the Court chose to frame the rule differently in *Mickens v. Taylor*, an ineffective assistance case:

> As a general matter, a defendant alleging a Sixth Amendment violation must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." [*Strickland v. Washington*, 466 U.S.] at 694, 104 S.Ct. 2052.
>
> There is an exception to this general rule. We have spared the defendant the need of showing probable effect upon the outcome, and have simply presumed such effect, where assistance of counsel has been denied entirely or during a critical stage of the proceeding. When that has occurred, the likelihood that the verdict is unreliable is so high that a case-by-case inquiry is unnecessary. *See [United States v.] Cronic*, [466 U.S. 648,] 658-59, 104 S.Ct. 2039; *see also Geders v. United States*, 425 U.S. 80, 91 . . . .

535 U.S. 162, 166 (2002). In this dictum, the Court appears to suggest a critical stage analysis. As trial is assumed to be a "critical stage" for purposes of the right to counsel, *Maine v. Moulton*, 474 U.S. 159, 170 (1985), such an analysis arguably overlooks the rule created by *Perry*.

Eighth Circuit cases offer little insight in this area. In its interference cases, it requires a showing that government conduct resulted in demonstrable prejudice or created a substantial threat of prejudice. *See Ervin v. Busby*, 992 F.2d 147, 149-50 (8th Cir. 1993); *Rainer v. Dep't of Corrections*, 914 F.2d 1067, 1071 (8th Cir. 1990); *United States v. Singer*, 785 F.2d 228, 234 (8th Cir. 1986).

This rule originates from the U.S. Supreme Court decision in *United States v. Morrison*. 449 U.S. 361 (1981). Like *Geders* and *Perry*, the case involved government interference with counsel, albeit *not* by a court. The question in *Morrison* was whether government agents, by communicating with the accused without that person's counsel present, interfered with the right

to counsel. Applying the rule just mentioned, the Court found no showing of prejudice, and thus ruled that no violation was established. *Id.* at 362, 365.

It is uncertain whether *Morrison* is controls here. It may not because, unlike *Geders* and *Perry*, it does not involve access to counsel during a recess at trial. Or it may apply because it involves conduct by extrinsic government agents, like the jail staff here, rather than the presiding judge.

The upshot of the preceding analysis is that, for all practical purposes, there is no clearly established federal law that contradicts the state courts' decision here. Citing the Eighth Circuit in *Singer*—thus indirectly citing the rule from *Morrison*—the Minnesota Court of Appeals held that without some showing of prejudice, the accused cannot establish a violation of the right to counsel. *See De la Garza*, 2006 WL 1984604 at *2. Consistent with this rule, if jail staff had in fact interfered with access to counsel, de la Garza would not be entitled to relief. *See Ervin*, 992 F.2d at 149-50 (noting that, if transfer between jails improperly interferes with access to counsel, accused must still show prejudice to establish violation of right to counsel).

Even assuming that Minnesota Court of Appeals had framed its analysis by reference to *Geders* and *Perry*, there is no definite principle that would compel a result. Neither decision has a clear statement of the prejudice rule. And because the purported denial here occurred before the case-in-chief, rather than during examination of the defendant, there may not be comparable concerns about the accused having an adequate opportunity to consult with counsel. Assuming, for that matter, that this concern is a material factor in this context.

In either case, the Minnesota Court of Appeals could have ruled that prejudice may not be presumed. Its reasoning is otherwise consistent with this rule.[1] Because the decision of the court is not contrary to clearly established federal law, as defined by U.S. Supreme Court precedent, de la Garza is not entitled to relief on this basis.

### C. Factual Review

For the second clause of § 2254(d), the inquiry is whether the state court made a factual finding that was unreasonable in light of the evidence before it. This clause is read together with § 2254(e)(1), which provides in relevant part,

> [A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

In accordance with this language, a petitioner under § 2254 has the burden to prove, by clear and convincing evidence, that the findings of the state court lacks support in the record. *Morales v. Ault*, 476 F.3d 545, 550 (8th Cir. 2007); *Trussel v. Bowersox*, 447 F.3d 588, 591 (8th Cir. 2006). When deciding this question, a federal court cannot alter state court findings about the credibility of a witness. *Perry v. Kemna*, 356 F.3d 880, 885 (8th Cir. 2004).

In the post-conviction proceedings before the state courts, the district court found that de la Garza did not ask to contact counsel on the evening of January 28, 2002. In his petition, de la Garza challenges this finding.

---

[1] The record otherwise strongly supports the conclusion that there was no unfair prejudice here. De la Garza claims that, because he could not communicate with counsel, his counsel was unable to prepare a motion for transfer of venue. The purpose of such a motion would be to acquire a pool of prospective jurors that was less biased by pretrial publicity. When de la Garza was tried, however, the jury acquitted him of first-degree murder. Such an acquittal indicates that the jury carefully considered the evidence, and in such circumstances, courts typically conclude that the jury was not improperly motivated by bias. *See, e.g., United States v. Tulk*, 171 F.3d 596, 599-600 (8th Cir. 1999); *United States v. Williams*, 97 F.3d 240, 244 (8th Cir. 1996).

At the November 17, 2004 hearing, de la Garza testified that he did request counsel that night. In this testimony, de la Garza refers to a written grievance that he filed with jail staff on January 29, 2002. Although the hearing transcript indicates that this document was received into evidence by the district court, the Commissioner has not included it with her submissions to this Court.

In his complaint, de la Garza quotes a portion of the January 29 grievance. (Pet. at 14.) De la Garza has also filed a document, which purports to be a copy of this grievance, with one of his filings. (Aff. of C. de la Garza [unsworn], July 13, 2007 [Doc. No. 42], Exh. 82). It states in relevant part,

> Yesterday was the beginning of my jury trial, my attorney had given me a newspaper . . . article . . . and I was supposed to get with him on my thoughts and yesterday I was denied my 1 ½ hour daytime room[.] . . . When I got back from court after long 8 – 10 hours of court, I needed to call my lawyer concerning my decision [text missing] the newspaper article, I was denied this & was denied any time of my remaining 20 minutes I had after trial[.] . . . I request that I be given [this time] after my long day after trial.

The record does not indicate whether this document was an accurate copy of the one that de la Garza offered at the November 17 hearing. Assuming that the grievance is true, it supplies some evidence he attempted to contact his counsel on the evening of January 28.

Aside from the testimony by de la Garza, the record lacks specific evidence about what happened that night. In his testimony, Wilson admitted that he had no personal knowledge of the events that evening. From his review of the jail records, Wilson asserted that de la Garza did not lodge a grievance about his access to counsel. Wilson also explained that jail policy forbids any restrictions on contact between an inmate and counsel.

Because the Minnesota district court concluded that de la Garza did not attempt to reach counsel the evening of January 28, it necessarily determined that de la Garza was not a credible

witness, and that Wilson was a credible witness. It is not the role of a federal court to review this determination, because the state court had a unique opportunity to view the witnesses' demeanor and decide who was truthful. This Court, therefore, will not disturb these findings.

Assuming that the January 29 grievance is genuine, there is no way to determine whether it accurately recounts what occurred on the evening of January 28. The document might supply some reason to doubt the state court, but it does not amount to clear and convincing evidence that the state court had no support for its findings. If the court credited Wilson's testimony, it could conclude that no grievance was lodged, or that the allegations in the grievance were untrue.

For these reasons, de la Garza has not overcome the presumption that the findings of the state court were correct. Its findings were reasonable in light of the evidence before it, and so de la Garza is not entitled to relief based on improper findings. Because de la Garza has not shown cause for relief under § 2254, either for legal or factual concerns, his petition is appropriately denied.

### D.     Residuary Issues

A few residuary concerns merit some additional comment here. In addition to the right to counsel, the decision of the Minnesota Court of Appeals briefly addressed another issue, whether jail staff improperly denied de la Garza access to his legal papers. *See De la Garza*, 2006 WL 1984604 at *3. In her most recent memorandum, the Commissioner addresses the issue as well.

As noted at the outset of this report, the August 31 order dismissed all the claims in this action but one, on the right to counsel. Although de la Garza's petition alludes to circumstances where jail staff allegedly withheld or destroyed his legal papers, he does not raise any claims or arguments based on this issue. (*See* Pet. at 23-24.) For these reasons, this Court does not deem it appropriate to consider this issue here.

De la Garza also has two pending motions. One is a motion for summary judgment, in which he repeats his demand for the relief he seeks through his petition. Because de la Garza has no cause for relief in his petition, it is suitable to deny his motion for summary judgment.

The other motion is for an order that would prevent the Commissioner from transferring him to another prison while his habeas petition is pending. In support of this order, de la Garza cites Rule 23 of the Federal Rules of Appellate Procedure. This rule ordinarily applies when a federal district court has *granted* a petition and the respondent appeals. *See Hilton v. Braunskill*, 481 U.S. 770, 774-75 (1987). Although the rule acknowledges circumstances where a petition is denied, but where a court still has discretion to release the petitioner, there are no circumstances that merit the exercise of such discretion here. So this motion is appropriately denied as well.

## IV.   RECOMMENDATION

Being duly advised of all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT:**

1. De la Garza's petition for a writ of habeas corpus under 28 U.S.C. § 2254 (Doc. No. 1) be **DENIED.**

2. De la Garza's motion for summary judgment (Doc. No. 40) be **DENIED.**

3. De la Garza's motion for other relief (Doc. No. 52) be **DENIED.**

4. This litigation be closed and judgment entered.

Dated this 23rd day of January, 2008.

                                                 s/ *Jeanne J. Graham*
                                                 JEANNE J. GRAHAM
                                                 United States Magistrate Judge

**NOTICE**

Pursuant to Local Rule 72.2(b), any party may object to this report and recommendation by filing and serving specific, written objections by **February 5, 2008**. A party may respond to the objections within ten days after service thereof. Any objections or responses filed under this rule shall not exceed 3,500 words. The district court judge shall make a de novo determination of those portions to which objection is made. Failure to comply with this procedure shall forfeit review in the United States Court of Appeals for the Eighth Circuit. Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve objections made to this report and recommendation, the party making the objections shall timely order and cause to be filed within ten days a complete transcript of the hearing.